I open up with this, that we recognize our case is based upon the State of Crete Endangered Period. We recognize that this course has not officially adopted that period, but we submit to you that this case submits a great opportunity for the court to consider this and to adopt it. We have a case where we begin with a policy from the Dallas Independent School District that was created and accepted in their Student Code of Conduct. And the part that we take issue with deals with special education students, and under disciplinary action for students, which would require for a student to be removed, that either drugs, weapons, or substantial bodily injury, and we would submit to the court that as it stands, it's unconstitutional on its face, because it required in the past, your body integrity, but it requires that a serious bodily injury occur to an individual before the special education student can be removed from that setting to an alternative setting. Counsel, why isn't this, how is this case distinguishable from DeShaney, wherein the Supreme Court concluded the government actor did not affirmatively act to increase the danger? Well, Your Honor, I think they did affirmatively act in this case by enacting the policy the way that they did. Well, the flip side of my question, that I think it probably is obvious, is what would school districts do any time a student committed an act that's violent or potentially violent? What do they do with that student if the student commits such an act? I mean, do they send the teacher back into the classroom? Knowing that a student may have a propensity for violent or dangerous conduct? Well, in this case, alternative placement into a different setting. This student was, essentially, he was in a regular high school, but he was in a setting that was where the teacher, in our case, she's not in a protective situation, and there's no provisions in place to protect her from what had been, in this case, sudden outbursts of violence. And this goes back to the policy in the part that we take issue with, which is there was a part in the Code of Federal Regulations that allows the school to look at each case on a case-by-case basis of need circumstances. And in that regard, don't we run, don't we find ourselves running into like an ADA-type situation where we need to accommodate, school needs to offer an accommodation to mainstream students with disabilities? Certainly. There is no question that that effort is in place, but what has been taken out is the ability of schools under this policy to address situations where there is violence, and where clearly there are unique circumstances, again, unique circumstances. This was a 17-year-old student. He was 250 pounds. The likelihood of him causing injury to either another student or a teacher, in this case, substantially higher. And so, without having the ability under the Student Code of Conduct for the AARP to consider this factor, because in the meetings, the first thing they're trying to determine is, is this a manifestation of his disability? And if it is, then that's where the protections come in, as I mentioned before, that it would then require serious bodily injury. And so, that's where we come back to the part of the, at least it being a highly predictable consequence of this policy, that if you are requiring serious bodily injury, you're in effect saying, we're not going to change the placement of this student, based upon a stall, until somebody really gets hurt, or in this case, killed. The, not only are the intricacies in various tests for state-created danger many, our court, as you know, en banc, has not adopted it ever, arguably in more egregious circumstances, where there's more affirmative conduct. So, that's just a statement. Here, the district court avoids all that, because it says the district isn't liable under Monell, correct? And so, what's the flaw in the district court's reasoning, where, as I understand it, you point to the school district disciplinary code that was adopted, that did or didn't conform to federal law, or maybe was inconsistent as to that. How could the school district be liable for that, when the information about this individual, the assaulter, doesn't happen until many, many years later? How is it a moving force that's done with deliberate indifference, when the court, when there's no chronological connection? Well, Your Honor, as a moving force, it is in the sense that the policy is the force that generates the ultimate outcome. There's, you have the initial policy. When was that drafted? Well, it's reissued every year. Now, but when was it initially put in that lacked what you claim are the determinative case-by-case phrasing? When was it? Your Honor, I don't know what date. Okay, but it's many, many years before this incident. And there's no evidence in the record to say that when they inadvertently or not omitted that language, they were being deliberately indifferent to an imminent harm, is there? Well, Your Honor, I disagree. Okay. That's a conclusion. It is a highly predictable outcome if you say, I am not going to remove a student for assault. But it doesn't say that. It says you will conform with federal law. But Your Honor, that part of the federal law is in the context of a conflict of law statement where there's no reference. It's not incorporated by reference. It's never referred to. I mean, just, I'm just being honest. I sort of, the district court seemed to think, and I see the point, we're supposed to identify the policy that's the moving force that was done indifferent to an imminent harm. And it may have been they were inattentive, but they did contemplate that serious bodily injury, arguably here, the fact that this young man punched and kicked her before the actual incident. So even on the basis of the district's policy, couldn't the ARD have decided to relocate him? They may not have. Tragic, but not caused by the moving force of the policy. Your Honor, under the policy as it is written, the ARD first determines if it's a manifestation. And if it is a manifestation of his disability, then it falls under the special circumstances provision. And under the special circumstances provision, that's where the issue is. That's where it says it has to be related to guns, drugs, or serious bodily injury. But I thought they knew that he'd punched and kicked her before. Isn't that serious bodily injury? Well, I certainly think it is, but I think that, well, let me walk that back. Maybe, maybe not. Maybe he punched her and she didn't have to go to the hospital. Maybe he kicked her and it left a bruise. And so serious bodily injury then becomes a question of, did you have to go to the hospital? Were you cut? Were you bleeding? Right, but deliberate indifference is a very high standard. You know of the immediate harm to follow. It's not maybe, maybe not, there'll be harm. But, Your Honor, it's that implicit acceptance in the rule that says, we're not doing anything until you're seriously hurt. That's the part that is so deliberately indifferent in this case. And it's also based upon the fact that it's not, these aren't decisions that are made in a hurry. These are ones that are made when essentially you're in a, you have the opportunity to reason, to talk about it. It's not like a policeman on the street that has to make a decision. And so when it's made under those circumstances, that you have a body, you have the, you have the board of the policymakers who are going to implement this, that accept it. They accept it as a clear, high likelihood, and a high probability that you got to have serious bodily injury first, before we remove the person. So, to find a constitutional violation, we would have to adopt the state create danger, correct? Yes, Your Honor. So what circuit would you recommend that we look to? The 11th is pretty stringent. I don't think your facts would get close. The 9th is pretty liberal, maybe so. What circuit are you suggesting, since we've never done it, we would look to, to give specific elements to fulfill that theory? Your Honor, I like the opinion in 2020 from the First Circuit, the Irish Fitches Ballot. 2020? Yes, Your Honor. And what, just describe the elements to me. An affirmative act that created or enhanced the danger to the plaintiff, but not to the general public. So, you have that, and then it's, it caused harm to the plaintiff, and that the officials had the opportunity to make an unruly judgment, deliberate indifference may shock the conscience. So, I think I'm saying that correctly, which is, it shocks the conscience in the sense that you had the opportunity, you had the fair opportunity to sit there and think about it, and yet you went ahead and had a policy that says, we're not going to make a change until somebody's seriously hurt. In other words, we're not going to give you the chance or the opportunity to look at this, look at the special circumstances first, and maybe make a change before somebody gets seriously hurt. And that's really what it all comes down to, is having a policy that provides the opportunity to make a change before somebody gets seriously injured. With that, I'll go on with one of the parts of our case that I thought was very powerful, is the ratification piece. And in that ratification piece, in the years that have come after that, they still enact the same Student Code of Conduct that does not incorporate the provision on a case-by-case basis. One of the things that I thought was very interesting is that one month after this, the Texas Education Agency did incorporate the case-by-case feature into their safeguarding for dealing with special education students. Finally, with the known victim piece, which I know is one that will be brought up. I know that this court has said you need to be able to say who is the victim. When you're dealing in a situation near the Dallas Independent School District, I don't think it's realistic to think that they're going to be able to say on a name-tape basis who the victim will be. However, based upon other studies, the third and the sixth, they confine that to a group of people, a designated group of people. I would submit to you that that's something that Jackson v. Indian Prairie, Estate of Smithers, which is a Seventh Circuit case, Estate of Smithers v. City of Flint, which is a Sixth Circuit case. You don't necessarily have to name the victim specifically. You have to designate a group, and in this sense you know who it would be, either a special education student or a teacher in that setting. In fact, you could on any given day say, give me a list of our special ed students and the teachers, and those would be the potential victims of who might be susceptible to this danger. So with that, Your Honor, that's the basis of my argument here. I think that most of the other circuits, with the exception of the Eleventh, have adopted the state-created danger theory. They're almost all keep it within the same realm of an affirmative act that either creates or increases the danger to a potential victim, and that the causation element is there, that it is the moving force. And to some extent, it's just not to the general public. Those are the general guidelines. I think those guidelines have been enunciated by this Court before. I know that in Green v. Texas A&M, I know that there was a Scanlon case first in Green, but those guidelines were the ones that were laid down, and in subsequent opinions by this Court, there's been very little deviation from those guidelines, and we would ask the Court to consider this. This is a great opportunity to enact and to recognize the state-created danger. Thank you, counsel. You've saved for bottle time. Okay, great. Mr. Rothey? Yes, Your Honor. Thank you, Mr. Court. The Sims contend that Dallas ISD's Student Code of Conduct was the moving force behind Ms. Sims' injuries, because they claim that it omitted the provision of the Code of Federal Regulations, but they claim it would have given the argument committee discretion to consider the unique circumstances on a case-by-case basis, and not place the student back in the environment that he was in with Ms. Sims. But the Student Code of Conduct is not a moving force for several reasons. First, any omission of 34 CFR section 300.538 from the Code of Conduct didn't cause a violation of Ms. Sims' constitutional rights, because even if the Code of Conduct had incorporated that section into its provisions, that provision of the Code of Federal Regulations would still have required the argument committee to return the student to his prior educational placement, contrary to Ms. Sims' assertion otherwise. This is because the language of 300.538 states that while school personnel can consider unique circumstances on a case-by-case basis when making decisions about educational placements for students with disabilities, they can only do so in a manner that is, quote, consistent with the other requirements of this section. It's the other requirements of this section that the argument committee followed in this case, and I think the allegations set forth in the complaint demonstrate that all the argument committee did here was follow those provisions. So once a student has violated the Code of Conduct, the argument committee then is required to conduct a manifestation determination to determine whether Ms. Conniff was a violation or was a manifestation of his disabilities. That's under subsection E of section 300.530. Once the argument committee conducts this manifestation determination, it brings to the determination that Ms. Conniff was a manifestation of a disability. They have no discretion in the Code of Federal Regulations but to return the student to the educational placement they were in, except for the exceptions that opposing counsel has pointed out in the case of serious bodily injury or possessing a firearm or possessing drugs. The allegations here show that- Is this your primary argument? Is the argument that even under the federal law, they couldn't move this young man away from her unless- There's no even temporary ability to delineate between a victim and an assailant until some committee convenes and finds out if it's sort of a manifestation or not? Yes, there is a temporary one to ten day under the Federal Regulations that allows a removal of a student with disabilities from a placement. But once those ten days are up, as soon as the argument committee has met and determined that there was a violation of the manifestation of the student's disabilities, then they must return him back to- Okay. It's probably not relevant, but let's say they decide, okay, the manifestation is that out of his disability, he's sociopathic. They've got to put him back in? If the disability is- No, the disability is what's causing him to have sociopathic tendencies. They have to put him back in. And there are other provisions in the regulations that would mitigate that. So you could conduct a functional behavioral assessment. You could implement a behavioral intervention plan to try and address the issues that are- What's your understanding of the District Court's ruling as to why it dismissed? The District Court dismissed because it found that there was no liability under the bill, that the policy wasn't moving forward. And do you defend that? Yeah, absolutely. Okay, and spell that out a little. Is it because chronologically the policy was enacted years and years before? Partly, it's mainly because- There's no causation between it? There's no causation between the policy, Your Honor, and the subsequent- There's no allegations that the board adopted the Code of Conduct with deliberate indifference to the fact that it was causing these constitutional violations, which is also why I think the ratification theory fails. Because there's no allegation that the board- So they adopted the Code of Conduct. They adopted annually, and they adopted it in June of 2020, so months before the incident involving the student. Of course, they re-adopted again the following year, and each year they're updating it to make sure it's compliant with federal law. And that's another point that's worth reiterating, is that the policy states that its purpose is to comport with federal law, and that district officials and the vendors in Congress would follow federal law. But there's no allegation here that when the board re-adopted the Code of Conduct in 2021, that they knew- First, I think there are maybe not even allegations that they knew what had occurred with the Sims, but even if they knew what had occurred with the Sims, there's no allegations that they knew that what had occurred with the Sims was because of the fact that there was an omission in their policy of this reference to Section 300.530A. And so because of that, there's no causal connection between the board- between the board's adoption of the policy and the injury to the Sims. Just in terms of sequencing, if we were to start with whether there was a constitutional violation, the first question would be whether to recognize it. You're staying agnostic as to that. Is that fair to say? Your Honor, obviously, I'm not going to advocate for the adoption of the state to create a danger for my client as a state entity. It could be a municipal entity and could be- especially in a circumstance like this. Like the case that we cited with the district court, but I don't think we cited it in our brief on the field, this court's case in McKinney v. Irving, Madison from 2002. Another special education case, that one involved a bus driver who was attacked. He was a special education teacher. He volunteered to drive the bus with all these special education students too. The alternative placement school. And he was attacked on the bus. He had actually complained before the attack that he ultimately suffered and said, hey, I need some help on the bus. And the school district didn't do anything. And this court found mostly the injury liable, even if it existed at the time. But I think- If we were to do that hypothetical again here, are you familiar with the First Circuit case that he mentioned? I can't recall the name of the First Circuit case. Okay. Iris? No, doesn't come to mind. It doesn't to me either. But obviously, the 10 circuits that have adopted it have very different standards. So part of the challenge is which one to pick. Yes, Your Honor. And I think that's a reason why, honestly, I would agree with the Fifth Circuit's position that there shouldn't be a state created danger, exceptionally. I think when you start opening the door to a state created danger theory exception, you start getting very close to constitutionalizing all sorts of tortious conduct by municipal employees or governmental employees, which could vastly expand the scope of liability beyond what we're currently is for. The logic, I guess, extrapolated from DeShaney is, is, and the case that comes to mind was one our court adverted to a Ninth Circuit decision long ago, Grubbs, in the prison confinement situation. Yes, Your Honor. If the government puts someone that's their ward into a cell where they can't defend themselves. And there's an interesting dissent from the Ninth Circuit, Murgia versus Langdon, very recent, that goes into detail about this, this disagrees with what's happened. I think in that opinion, it says that the court doesn't hide an elephant in a mouse hole. We shouldn't have extrapolated this vast expansion of substance use process through the state created danger theory, just because of a couple of sentences of DeShaney that say, well, they didn't do anything to increase the danger theory. And, is it, is it create, enhance, or just take no intercede, don't intercede? Is that, or that's part of the problem? I'm sorry. In other words, here, I'm not sure if the theory would be they've created the danger, and they probably haven't enhanced it, but they certainly didn't step in once, once the ARD knew of, of the violent tendencies. So there's an inaction component. There is an inaction component, although I would push back on that a bit, based on their allegations, because the ARD Committee did meet, essentially, what the allegations show is that the ARD Committee did everything that they were supposed to do under the regulations. As soon as there was an incident involving physical assault by the student, they convened an ARD meeting, which, by the way, includes not only school officials, but also parents, so decisions that are coming out of the ARD Committee don't necessarily reflect entirely, you know, solely state action, but they also reflect the input of the parent, which is obviously a non-state actor. But, I apologize, I probably lost my train of thought. No, that's all right. It was the inaction point. You can go ahead and finish up whatever your outline had. On the inaction issue, they did exactly what they were supposed to do. They convened the ARD meeting. They evaluated whether it was a manifestation of a disability. Once they determined it was a manifestation of a disability, they returned him to the classroom where he was, but as according to the allegations in the complaint, they went further and they implemented a behavioral intervention plan, which is outlined in the regulations, section 300.530, which is designed to help mitigate the issues that are arising because of the student. And, getting to the issue of did they place Ms. Sims in immediate danger, it appears, at least drawing inference from their allegations, because several months passed between the ARD Committee meeting and the implementation of the behavioral intervention plan, that it was at least somewhat effective, because several months passed before there was another incident involving Ms. Sims. Again, as to the deliberate difference standard, as was noted, it's very high. It requires the board to adhere to policies that it knew or should have known would cause constitutional violations, and that usually requires allegations in the pattern of similar constitutional violations, which we don't have here. There are no allegations the board was aware of in prior situations. And this would kind of get to the issue of, well, was this a known or obvious risk? I don't think that we can say this was a known or obvious risk, because it counts for the state issue, where there's never been an incident before that's placed the board on notice that these types of, that it's ARD Committees, might not necessarily be considering unique circumstances on a case-by-case basis, are unreasonably or deliberately placed in their teachers in situations of immediate danger or harm. I think, even if, I guess, so we agree with the district court's decision that there's no liability under Monell, even if we accept, if the court were to adopt the created danger theory, I think there's still also no plausible allegations that the ARD Committee created an immediate danger to the Sims with deliberate indifference to her. Again, the ARD Committee here didn't create the fire. Federal law requires Dallas ISD to educate students with disabilities in the least restrictive environment, and a lot of the times that means placing students with known kind of issues, violence, in an educational setting. Federal students and teachers, obviously. But here, the ARD Committee really followed federal law by placing the student in the least restrictive environment, and there's no allegation that they took any action to increase the danger that Ms. Sims faced. In fact, like the Supreme Court held in the Shane case, if the ARD Committee had done nothing at all, the student would have remained in the same education setting as Ms. Sims and presented the same risk that he presented to her before. The ARD Committee didn't move forward. Is that a tax of violence? Also, again, because months passed between the ARD Committee's decision to return a student and the incident that led to Ms. Sims' death, there's no allegation that the ARD Committee knew of an immediate danger to Ms. Sims in particular. And they didn't use their authority to create an opportunity for the student's actions that would not have otherwise existed. Okay, counsel. Do you have more? Yeah, those are my main arguments, I think. I guess I would just conclude that here, the particular danger of this case is that the allegations really demonstrate that Dallas ISD and its ARD Committee was acting entirely consistent with federal law. Federal law and regulations required the ARD Committee to return a student to the same educational placement once they determined that his misconduct was a manifestation. That decision would have been the same, whether policy incorporated into Section 300.530A or not. Because 300.530A, while granting the ARD Committee's discretion to consider unique circumstances, states that they can only do so within the confines of the other requirements of the section. Therefore, the sense of the link really is we've got a law and it's in compliance and not with the Dallas ISD's policy. As a result, we've Dallas ISD asked the court to confirm the district court's dismissal. Thank you, counsel. Rebuttal. Your Honor, in response to the repeated argument that it's in compliance with federal law, again, there's no question that that provision, Section A of the 300-530A, was not in the student code of conduct. But when you follow the causation analysis, it does fit. Because at the time of the initial meeting in September of the school year, where he had punched Ms. Sims, there was an initial meeting. And in that meeting, it was determined that it was a manifestation but because of the student code of conduct in that December, he remained in that classroom. And during the intervening time, there was actually another event where she was kicked in December. And then it was in January, right after the return from the holidays, that this incident happened, where he grabbed her, pushed her repeatedly over the bookshelf and caused the injury that led to her death. And in that causation piece, Your Honor, that policy was the force that generated the follow-through decisions that led to her death. I know it was four months. But during this period of time, they knew the danger. And nothing in that policy allowed the AARP to take the corrective action that they could have taken in September. And recognized and sat down and had a discussion and talked about the unique features. This is a very large 17-year-old. He has sudden outbursts and he's next to a 56-year-old lady. She does not have the ability to protect herself if there is another outburst of violence. And that's what goes back to so much of this, is you're putting somebody in a position where they do not have the ability to meaningfully protect themselves. And in the case that he brought up about McKinney, Ms. Sims did not ask to be in a position where she can be killed by a student. I know there's that case about the bus driver, but when she's there, she's there to teach. The First Circuit case you mentioned, is that a school, it's a school context? No, sir. No, Your Honor. But that was one that was based upon a, there was a, a murder and a rape. There was a, there was a boyfriend. And that was... But what was the government, what was the government context? Well, it was, it was government in action. I know, but in what context? Prison, school? Oh, no, no, it wasn't, it was neither. It was essentially a protective order. There had been threats against an individual. Okay. Part of my problem is still the first question I asked, which is, from your description, the ARP committee just followed what it had to follow. So I removed them. I'm looking at the school district and the school district that authored this policy that you claimed they had to follow, which caused her death. But there's no allegation that the school district, when they authored that policy, had any knowledge. In fact, many, many years go by and the record doesn't reflect any incident like this. So I'm just still unsure how we can attribute deliberate indifference to the authors of the policy. That's putting aside their argument that actually the policy is identical to what the federal government requires. So those are two separate difficulties. Well, it removes the case-by-case analysis. But Your Honor, if you have a situation where you're saying, here are the rules. We're only removing a student under these special circumstances if there's guns, drugs, weapons, drugs, or serious bodily injury. A contemplated consideration of this says, wait a second, what if there is assault without bodily injury? Can we consider this? But with great respect, contemplated consideration is not the standard. It's got to be so much worse than that. It's deliberate indifference to a known danger. I see your point powerfully that had they really contemplated that there could be an explosive violent moment despite no bodily injury. But what was the phrase you used? Contemplative what? Consideration? Well, yes, it's a highly predictable consequence. And Your Honor, I can go back to Piotrowski, this court. We know Piotrowski brought you. So maybe since I did take up your time with the question, go ahead and finish just the sentence. What's your last proposition you want to leave us with? Piotrowski, a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the, quote, known or obvious consequences that constitutional violations would result. Okay. Thank you very much. Thank you both. The case is submitted. That concludes the case for the day. We stand in recess.